**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Canning,<br><br>     Plaintiff,<br><br>vs.<br><br>Medtronic Incorporated, et al.,<br><br>     Defendants. | No. CV-19-04565-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiff Anthony Canning's ("Plaintiff") Motion to Exclude (Doc. 137) and Motion for Leave (Doc. 124). In the Motion to Exclude, Plaintiff seeks to exclude the expert opinions of Michael Seger, M.D., and Jorge Ochoa, Ph.D. Plaintiff's Motion for Leave, on the other hand, seeks leave to permit the late disclosure and testimony of Plaintiff's purported rebuttal expert, Karl Leinsing. Plaintiff asserts that Mr. Leinsing's testimony is only necessary in the event this Court denies Plaintiff's Motion to Exclude and permits the testimony of Dr. Seger and Dr. Ochoa. Both of Plaintiff's motions are fully briefed and ready for review. (Docs. 137, 143 & 144; Docs. 124, 131 & 133). After reviewing the parties' briefing, the Court rules as follows.

**I. BACKGROUND**

This is a products liability case arising from the use of a medical stapler gun during a surgical procedure performed on Plaintiff. (Doc. 13 at 2). The procedure—a robotic total gastrectomy during which Plaintiff's stomach was surgically removed—took place on December 14, 2017 at Mayo Clinic Hospital ("Mayo") in Phoenix, Arizona. (*Id.*). The

stapler was an EEAXL2535 model stapler[1] (a single-use device) that was designed and manufactured by Defendant. (*Id.*). After Plaintiff's stomach was removed, the Mayo surgeons inserted the stapler into Plaintiff's esophagus to create an "anastomosis"[2] between his esophagus and his intestinal tract. (*Id.* at 3). The surgeons fired the stapler, but it failed to deploy staples. (*Id.*). As a result, Plaintiff's esophagus was torn, and the anastomosis had to be completed by hand. (*Id.* at 4). Plaintiff suffered extended stays in the ICU, in the hospital, and in rehabilitation. (*Id.*). His pain was continuous and magnified by any attempts to swallow or breathe, and he will continue to suffer deterioration in his ability to intake adequate nutrition. (*Id.*).

Following the surgery, the stapler was sent back to Defendant for inspection. (*Id.* at 3). Defendant inspected the stapler and found that it had been fired, and that it contained no staples. (*Id.*). Defendant installed staples, fired the stapler, and reported that it functioned properly. (*Id.*). Plaintiff now alleges that the stapler was delivered by Defendant to Mayo without staples, and that it was therefore defective. (*Id.*).

On May 24, 2019, Plaintiff filed a Complaint against Defendant in the Superior Court of the State of Arizona. (Doc. 1-3 at 8). On June 26, 2019, Defendant removed the case to this Court. (Doc. 1 at 1). On July 23, 2019, Plaintiff filed an Amended Complaint containing two counts. (Doc. 13). Count I ("Negligence") can be distilled to three claims: negligent design, negligent manufacture, and negligent failure to warn. (*Id.* at 5). Count II ("Strict Liability/Breach of Implied Warranty/Defect of Manufacture and Design") can also be narrowed to three claims: strict-liability design defect, strict-liability manufacture defect, and breach of implied warranty. (*Id.*).

///

---

[1] In their Joint Rule 26(f) Case Management Report, the parties more specifically identified the stapler as a DST Series™ EEA™ XL 25mm Single Use Stapler with 3.5 staples (reorder code EEAXL2535). (Doc. 20 at 2).

[2] Plaintiff explains that an anastomosis "is a surgically created connection between two structures that are not normally connected." (Doc. 137 at 3, n.3).

2

## II. DISCUSSION

Plaintiff's theory of the case is that the stapler was delivered by Defendant to Mayo without staples and that it was therefore defective. Defendant contends that there *were* staples in the stapler or, at the least, that Plaintiff lacks evidence to prove the absence of staples. Plaintiff first seeks to exclude the opinions of two defense experts: Dr. Seger and Dr. Ochoa. If the Court denies that request and permits their testimony, Plaintiff alternatively requests that this Court grant him leave to permit the late disclosure and testimony of his purported rebuttal expert, Mr. Leinsing. The Court will address each motion in turn.

### A. Plaintiff's Motion to Exclude Defendant's Experts

Plaintiff requests that this Court exclude the opinions of Dr. Seger and Dr. Ochoa under Federal Rule of Evidence ("FRE") 402 because their testimony is irrelevant and because Defendant's disclosure of them was in violation of certain state laws. Specifically, Plaintiff argues that how the stapler was used during Plaintiff's procedure is not at issue in this case and that the stapler's use is therefore irrelevant under FRE 401. (Docs. 137 at 2 & 144 at 3). Plaintiff also asserts that (i) Dr. Seger and Dr. Ochoa are not qualified under Arizona law to opine as to the care provided by the Mayo surgeons and (ii) their opinions place fault on Mayo and its surgeons, which violates the "nonparty-at-fault" deadline and prejudices Plaintiff. (Doc. 137 at 6).

First, the Court rejects Plaintiff's contention that the opinions of Dr. Seger and Dr. Ochoa are irrelevant. FRE 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" *and* "the fact is of consequence in determining the action." Fed. R. Evid. 401. Likewise, FRE 702 requires that "expert testimony . . . be both relevant and reliable." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (citations omitted). "The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)). "Relevancy depends on the particular law at issue because '[e]xpert opinion

testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.'" *Id.* (citing *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)).

Here, Plaintiff argues that Dr. Seger's and Dr. Ochoa's testimony is "only relevant and admissible if the Mayo surgeons' acts, omissions, and/or fault is at issue for trial." (Doc. 137 at 9). This argument implies that their testimony is concerned only with the conduct and liability of the surgeons, and not with anything else. At best, the Court finds Plaintiff's argument to oversimplify their testimony; at worse, it misrepresents their testimony entirely. Dr. Seger's and Dr. Ochoa's testimony offers more than just opinions about the surgeons' "acts, omissions, and/or fault." For instance, Dr. Seger also opines about what to expect when a stapler is fired without staples. (Doc. 137-1 at 5). And Dr. Ochoa opines about the "six steps" in Defendant's manufacture of the stapler where the presence of staples is checked. (Doc. 137-2 at 20). This testimony is clearly relevant to the issue of whether the stapler had staples in it—the pertinent inquiry in this product defect case. Even setting those examples aside, this Court finds no instance—in expert reports or in deposition testimony—where Defendant's experts opine that the surgeons were at fault or otherwise measured their acts and omissions against any standard of care. Instead, their opinions focus on how the stapler was used and how it functioned during the procedure, and whether that usage provides any indication as to the presence of staples in the stapler. In sum, Plaintiff's manufacture defect claim relies entirely on the "no-staples" theory; the opinions of Dr. Seger and Dr. Ochoa are focused on that theory's viability rather than on the conduct of the surgeons. Therefore, the Court finds their testimony to easily pass the "low bar" for evidentiary relevancy.

The Court turns now to Plaintiff's primary argument for exclusion, that the testimony of Dr. Seger and Dr. Ochoa—and Defendant's disclosure of that testimony—violates certain statutes. According to Plaintiff, Defendant's experts opine that the Mayo surgeons—nonparties in this action—failed to act in accordance with their standard of care during Plaintiff's procedure and are at fault for Plaintiff's injuries. (Doc. 137 at 5–6). Plaintiff cites to three statutory provisions and one rule which he argues were violated by

4

Defendant's disclosure of their testimony: A.R.S. §§ 12-2603, 12-2604, 12-2506, and Arizona Rule of Civil Procedure 26(b)(5).

Under Rule 26(b)(5), a party must serve on all other parties, and file with the court, "a notice disclosing any person: (A) not currently or formerly named as a party in the action; and (B) whom the party alleges was wholly or partly at fault under A.R.S. § 12-2506(B)." Ariz. R. Civ. P. 26(b)(5); *see also LyphoMed, Inc. v. Sup. Ct. in & for Cnty. of Maricopa*, 172 Ariz. 423, 425–26 (Ct. App. 1992) ("Rule 26(b)(5) of the Arizona Rules of Civil Procedure was adopted to implement [§ 12-2506]."). This notice of nonparty at fault must be served and filed *within 150 days* after the party files its answer. Ariz. R. Civ. P. 26(b)(5). Here, the nonparty-at-fault deadline was January 3, 2020. (Doc. 137 at 5). According to Plaintiff, Defendant did not disclose its intention to argue nonparty fault until it disclosed of Dr. Seger's and Dr. Ochoa's expert opinions on August 23, 2021—more than 20 months after the deadline. (*Id.*).

Sections 12-2603 and 12-2604 set out certain requirements for experts offering testimony on the standard of care in healthcare-related suits. Specifically, § 12-2603 requires a party who designates a healthcare professional as a nonparty-at-fault to file and serve a written certification that states "whether or not expert opinion testimony is necessary to prove the healthcare professional's standard of care." A.R.S. § 12-2603(A). The statute sets forth other requirements and procedures, such as requiring the service of a "preliminary expert opinion affidavit" within sixty days after filing the designation and providing a method of disputing another parties' designation that no expert testimony is necessary. *Id.* Section 12-2604, on the other hand, prohibits a witness from providing expert testimony on the appropriate standard of practice or care *unless* the witness is a licensed health professional *and* the witness has at least equivalent specialties and board certifications with the person against whom or on whose behalf the witness will testify. § 12-2604(A). The statute further provides other criteria for standard of care testimony. *Id.* Here, Plaintiff argues that Defendant failed to comply with § 12-2603 by not designating the Mayo surgeons as nonparties at fault and by not serving a written certification stating

whether expert opinion testimony would be necessary to prove the surgeons' standard of care. (Doc. 137 at 6–13). Further, Plaintiff argues that Dr. Seger and Dr. Ochoa—as compared to the Mayo surgeons against whom they would testify—lack the requisite specialties and board certifications to opine as to the standard of care in this case. (*Id.*).

The Court finds the above statutes and rule inapplicable because Defendant does not intend to argue that Mayo or its surgeons are nonparties-at-fault and because Defendant's experts do not opine as to any standard of care or to any fault of nonparties. Therefore, Defendant was not required to comply with Rule 26(b)(5)'s 150-day notice requirement by disclosing the Mayo surgeons as nonparties at fault. Nor was Defendant required to comply with § 12-2603—that is, Defendant was not required to file a nonparty-at-fault designation nor a certification indicating whether it intended to use expert testimony. Section 12-2604's specialty and board certification requirements are also inapplicable because Defendant's experts do not testify as to the appropriate standard of care or practice.

Plaintiff's argument is that Defendant's experts critique the surgeons' use of the stapler during the procedure and thereby allocate fault to the surgeons. (Doc. 137 at 6, 10–13). By opining as to how the surgeons "misused" the stapler, Plaintiff asserts that the experts are *substantively* opining as to the standard of care, even if they fail to actually use the words "standard of care." (Doc. 144 at 1–2). As examples, Plaintiff points to "several pages" of Dr. Seger's report where he "posit[ed] the different ways that the three Mayo doctors . . . may have mis-used the staple gun." (Doc. 137 at 5 (citing Doc. 137-1 at 5–7)). Similarly, Plaintiff refers to certain pages of Dr. Ochoa's report where he, "like Seger, also tries to point the finger at the Mayo doctors by critiquing their use of the staple gun." (*Id.* (citing Doc. 137-2 at 35–37, 43)).

The Court recognizes that an expert's opinion may substantively amount to standard-of-care testimony even if the expert avoids using the words "standard of care." Such is *not* the case here, however. There is a difference between testimony that alleges product misuse amounting to fault or negligence, and testimony that merely explains how the product was used and functioned during a procedure. The former may amount to

standard-of-care or "fault" testimony; the latter does not. Here, Dr. Seger's and Dr. Ochoa's testimony describes Plaintiff's procedure—specifically, how the stapler was used and how it functioned—without necessarily assigning any fault to Mayo or its surgeons. Their theory is that the stapler *was* loaded with staples, and that the failed anastomosis was caused by the anvil and stapler head separating prior to the stapler's firing ("separation theory"). While they speculate as to why the separation occurred, they do *not* opine that the surgeons are necessarily at fault for Plaintiff's injuries because of it. Nor do they opine that the surgeons—by using the stapler in a manner that allowed the separation to occur—failed to act in accordance with some standard of care.

Indeed, this Court's review of the relevant expert reports and deposition testimony[3] reveals that Dr. Seger and Dr. Ochoa are careful not to speculate as to any "standard of care." While the experts do not shy away from discussing the details of the procedure and speculating as to how the stapler was used, they never "point the finger at" or directly criticize the surgeons. (*See, e.g.*, Docs. 137-1 at 3–5 & 137-2 at 7–10). They never speak of the surgeons' conduct in terms of negligence. They never state that what the surgeons did—specifically, how they used the stapler—was right or wrong in any way. While they opine that the stapler *did* have staples and that the failed anastomosis resulted from the anvil and stapler head separating prior to firing, they stop short of directly blaming the surgeons. In this way, it remains at least plausible that fault remains elsewhere, such as with Defendant and its product.

The closest either expert comes to faulting the surgeons is when Dr. Ochoa notes that the instruction-for-use provide that one must hold the "black twist knob" firmly when attaching the anvil to the instrument; Dr. Ochoa immediately follows this up by stating that both of Dr. Stucky's hands were accounted for and that neither was holding the black knob.

---

[3] Specifically, this Court reviewed Dr. Seger's report (Doc. 137-1), Dr. Ochoa's report (Doc. 137-2), and Dr. Ochoa's deposition testimony (Doc. 137-12). The parties did not provide a transcript of deposition testimony for Dr. Seger. The Court is unaware of any deposition being taken of Dr. Seger and only has his report (Doc. 137-1) available for review.

(Doc. 137-2 at 35–36). By starting with the instructions and then stating that Dr. Stucky did not follow them, Dr. Ochoa appears to place fault on Dr. Stucky. However, this still falls short of accusing Dr. Stucky of negligence or of failing to meet a standard of care. As Dr. Ochoa explains in his deposition, the instructions-for-use are not intended to tell the surgeons how to practice medicine, but rather to provide them with "technical and performance information about the device." (Doc. 137-12 at 9). The surgeon then uses that information *in combination with* "their education, training and experience" to make patient treatment decisions. (*Id.* at 9, 11–12). Thus, by noting that Dr. Stucky did not follow the instructions-for-use, Dr. Ochoa is not opining that Dr. Stucky fell above or below any standard in the practice of medicine. Rather, he is understanding and explaining how the stapler was functioning in the environment in which it was used and what that means, from an engineering perspective, as to whether the stapler had staples in it. (*Id.* at 15, 21).

All told, the reports of Dr. Seger and Dr. Ochoa focus less on the conduct of the surgeons and more on the device, and only consider the former to the extent it informs about the latter. Both experts focus on the central issue: whether the stapler used on Plaintiff contained staples and, if so, how the failed anastomosis occurred anyway. Their conclusions are not that the surgeons were to blame, but rather that the evidence indicates the stapler had staples in it. (Docs. 137-1 at 7 & 137-2 at 15). Reaching this conclusion *of course* involves consideration of the surgeons' conduct during the procedure, but as Dr. Ochoa explains, this is just one factor in assessing a medical device. (*See* Doc. 137-12 at 17–18 (explaining that "three pillars" of assessing a medical device are surgical factors, patient factors, and device factors)). In fact, Dr. Ochoa was specifically asked at his deposition whether he was concluding that the surgeons engaged in any wrongdoing:

> Q: Dr. Ochoa, are you claiming that any of [Plaintiff]'s surgeons did anything wrong?
>
> A: No, I am not offering any opinions on that. I would defer to a physician to address those questions.
>
> Q: Are you claiming that any of [Plaintiff]'s surgeons violated the standard of care?

>A: No, not at all.
>
>Q: Are you claiming that any of [Plaintiff]'s surgeons were at fault for what they did?
>
>A: No, I could not offer an opinion on that and I don't.

(*Id.* at 35–36). Moreover, the Court finds Plaintiff's request—to entirely exclude Dr. Seger and Dr. Ochoa—unreasonable. Plaintiff asserts that Defendant should not be allowed "to introduce *any* evidence (including expert opinion evidence) as to how members of the Mayo surgical team handled, used, manipulated, or otherwise employed the single-use staple gun." (Doc. 137 at 7 (emphasis added)). As Defendant put it, Plaintiff is "boldly asking" that jurors not hear *any* evidence from Defendant concerning what occurred during the surgery or how the stapler was used. (Doc. 143 at 3). Instead, Plaintiff wants the jury hearing "only his version of the events." *Id.* The Court agrees with Defendant.

A few things are certain in this case. First, we will never *definitively* know whether the stapler had staples in it. Second, the answer to this question is critical to Plaintiff's defect claim—in fact, it is determinative, given that "no staples" is Plaintiff's *only* defect theory. Third, this question is a fact question that will be left for the jury and the jury alone. These certainties underline the importance of Dr. Seger's and Dr. Ochoa's testimony. Excluding their testimony would leave the jury with only half the story on a central fact question of this case. As noted above, Dr. Seger's and Dr. Ochoa's opinions offer more than just the separation theory. They explain how the stapler functions, what can be expected when it is fired with and without staples, and details of Defendant's manufacturing process including the steps that are in place to ensure the presence of staples and overall quality control. (Docs. 137-1 at 3, 5 & 137-2 at 7–8, 19–29). These are just a few examples of testimony offered by Defendant's experts that is not only relevant and valuable to the jury, but that also has nothing to do with the surgeons' standard of care or whether fault lies with them. To do as Plaintiff requests and entirely exclude the testimony of Dr. Seger and Dr. Ochoa, this Court would unjustifiably handicap Defendant's ability to defend itself and would withhold from the jury probative evidence on a determinative

fact question—things this Court is unwilling to do under these circumstances.

The Court concludes that, so long as Dr. Seger and Dr. Ochoa's testimony merely describes *how* the stapler was used—without characterizing that use as "misuse" or outright blaming the stapler's failure on the surgeons—their testimony does not constitute "standard of care" or "fault" opinion. For example, in describing the separation theory, the experts may be able to testify as to the fact itself, *i.e.*, "the anvil and stapler separated and did not fully compress together." However, they may *not* be able to testify that "*the surgeons failed to* fully compress the anvil and stapler together." The Court recognizes that the difference between the two is subtle and that it may sometimes be difficult to make the distinction. But this Court simply cannot grant Plaintiff the relief requested on this Motion—that is, wholesale exclusion of Dr. Seger and Dr. Ochoa. To the extent that Plaintiff believes specific excerpts of their testimony should be excluded, Plaintiff may file an appropriate motion *in limine* prior to trial. This Court will not, however, wholly exclude the opinions of Defendant's experts, and Plaintiff's Motion to Exclude is therefore denied.

### B. Plaintiff's Motion for Leave

Given that Dr. Seger and Dr. Ochoa will not be excluded, the Court must now rule on Plaintiff's Motion for Leave (Doc. 124).[4] Before addressing the Motion's merits, the Court will first review some of the relevant procedural background. Plaintiff filed this lawsuit in state court on May 24, 2019. (Doc. 1-3 at 8). The case was removed to federal court the following month, and Defendant filed its answer on August 6, 2019. (Docs. 1 & 14). Under Rule 26(b)(5), Defendant then had 150 days—until January 3, 2020—to disclose any nonparty whom Defendant sought to allege was wholly or partly at fault. That deadline passed and Defendant failed to disclose any nonparty at fault.

Over the course of 2020 and 2021, this Court granted the parties a series of

---

[4] Had this Court excluded the opinions of Dr. Seger and Dr. Ochoa, it would not have had to consider Plaintiff's Motion for Leave. (*See* Doc. 137 at 2 ("In the event this Court does not exclude [Dr. Seger's and Dr. Ochoa's] opinions, [Plaintiff] submits that he should be permitted to disclose and use the expert opinions of Karl Leinsing.")).

extensions to their expert and rebuttal expert disclosure deadlines. (Docs. 22, 28, 30, 74, 96, 102, 107, 110, 113 & 117). The parties and this Court ultimately settled on the following deadlines: March 8, 2021 as the deadline for Plaintiff's expert disclosures; August 23, 2021 as the deadline for Defendant's expert disclosures; and September 27, 2021 as the deadline for the parties' rebuttal expert disclosures. (Doc. 117 at 1–2). On August 23, 2021, Defendant disclosed Dr. Seger and Dr. Ochoa as expert witnesses. (Doc. 120). Plaintiff failed to disclose a rebuttal expert prior to the September 27, 2021 deadline. As discussed above with respect to Plaintiff's Motion to Exclude, Plaintiff argued that Defendant's experts placed fault on the surgeons by asserting they misused the stapler. And because the surgeons are nonparties in this matter, Plaintiff argued that Defendant should have disclosed them as "nonparties at fault" prior to the January 3, 2020 deadline. Plaintiff moved to exclude their testimony. After finding that their testimony did *not* place fault upon the surgeons, this Court now denies the Motion to Exclude. *See supra* pt. II, sec. A.

On November 11, 2021, Plaintiff filed this Motion for Leave, requesting leave—in the event this Court denied the Motion to Exclude—to permit the late disclosure of Mr. Leinsing, Plaintiff's purported rebuttal witness. The request came 248 days after Plaintiff's expert disclosure deadline and 45 days after the rebuttal expert disclosure deadline. Plaintiff argues that his failure to *timely* disclose of Mr. Leinsing's testimony is both substantially justified and harmless, and that it should therefore be excused. (Doc. 124 at 4). In response, Defendant argues that Mr. Leinsing's testimony is not rebuttal testimony at all, and that it instead represents a new theory that Plaintiff is trying to introduce. (Doc. 131 at 2, 4–6). Defendant also argues that Mr. Leinsing's late disclosure is neither substantially justified nor harmless, and that it should therefore be denied. (*Id.* at 2, 6–11).

The Court first addresses whether Mr. Leinsing's testimony constitutes "rebuttal" testimony at all. Under Federal Rule of Civil Procedure 26(a)(2)(D)(ii), a "rebuttal" opinion is defined as one "intended solely to contradict or rebut evidence on the same subject matter identified by another party." In other words, "[t]he function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *Armer*

*v. CSAA Gen. Ins. Co.*, No. CV-19-04402-PHX-DWL, 2020 WL 3078353, at *5 (D. Ariz. June 10, 2020) (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)). These definitions align with this Court's September 2019 Case Management Order, which stated that "[r]ebuttal experts shall be limited *to responding to opinions stated by initial experts*." (Doc. 22 at 3 (emphasis added)). Here, the opinions asserted by Mr. Leinsing do not constitute rebuttal opinions; instead, they are opinions that Plaintiff was required to disclose by the initial expert disclosure deadline of March 8, 2021.

Dr. Seger and Dr. Ochoa opine that the stapler had staples in it, and that the failed anastomosis was more likely caused by separation of the anvil and stapler. *See supra* pt. II, sec. A. A proper rebuttal opinion would thus seek to "explain, repel, counteract or disprove" Dr. Seger's and Dr. Ochoa's opinions. *Armer*, 2020 WL 3078353, at *5. Here, one would expect a rebuttal expert to argue that the stapler did *not* have staples, or that the failed anastomosis was *not* caused by a separation of the anvil and stapler. Instead, Mr. Leinsing's testimony accepts Dr. Ochoa's opinion as true and goes on to conclude that the stapler could have feasibly been designed with a safety feature that would have prevented it from firing until the anvil and stapler were fully mated together. (Doc. 135-6 at 6).

Plaintiff does not even dispute this characterization of Mr. Leinsing's testimony, stating that Mr. Leinsing's report "indicates that *if, indeed, the [Defendant's] experts are correct* and there was misuse of the product, active safety measures in the stapler were feasible and should have been installed." (Doc. 124 at 4). In other words—and as Defendant argues—Plaintiff appears to be using Mr. Leinsing's testimony not to rebut the opinions of Defendant's experts, but rather to offer a brand-new design defect theory, something that is clearly prohibited by the law. *See Facciola v. Greenberg Traurig LLP*, No. CV-10-1025-PHX-FJM, 2012 WL 1242382, at *1 (D. Ariz. Apr. 11, 2012) ("Rebuttal reports cannot be used to introduce new theories or to correct oversights in the plaintiffs' case in chief."); *Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 340 F. Supp. 3d 934, 995 (N.D. Cal. 2018) ("Rebuttal testimony cannot be used to advance new arguments or new evidence. . . . The test of whether an expert's opinion constitutes rebuttal or a new

12

opinion [is] . . . whether a rebuttal attempts to put forward new theories outside the scope of the report it claims to rebut." (citations and internal quotations omitted)).

The Court finds Defendant's citation to *Armer v. CSAA General Insurance Co.* persuasive. In that case, the defendant insurance company's expert opined that the plaintiff's pelvis was fractured *prior* to the car accident at issue. *Armer*, 2020 WL 3078353, at *3. This contradicted the plaintiff's theory that the fracture was caused by the accident. *Id.* at *2. After the plaintiff's expert disclosure deadline—but *before* the rebuttal expert disclosure deadline—the plaintiff sought to introduce the testimony of her own purported rebuttal expert. *Id.* at *4. The new expert would testify that the plaintiff indeed had a pre-existing pelvic fracture at the time of the accident, but that the accident exacerbated the injury. *Id.* at *4–6. The court found that the new expert's exacerbation theory was *not* rebuttal testimony because—instead of contradicting or rebutting the defendant's expert— the new expert sought *to adopt* that expert's theory and then "utilize [it] as the springboard for an entirely new theory of causation." *Id.* at *6. The court held that "[w]hatever the scope of rebuttal, it cannot be so expansive as to allow a party to discard its initial theory of causation and adopt a new, contradictory theory that would be introduced during its case-in-chief." *Id.* (citations omitted).

Here, the Court finds that Plaintiff is attempting to do the same thing. Plaintiff's theory of the case is that the stapler lacked staples when it was delivered to Mayo, and that it therefore had a manufacture defect. Defendant's experts opine that the evidence suggests the presence of staples, and that the cause of the failed anastomosis was instead a separation of the anvil and stapler. Now, well after all expert disclosure deadlines, Plaintiff seeks to introduce Mr. Leinsing's opinion that, *first*, accepts Dr. Ochoa's conclusion as true, and *second*, uses that conclusion "as the springboard" for his own theory that the stapler's failure could have been prevented with an alternative, feasible design—a design that would have prevented the stapler from firing until the anvil and stapler were fully compressed together. (Doc. 135-6 at 6). In other words, Mr. Leinsing's testimony would introduce a

new theory altogether, that the stapler had a *design* defect.[5] Thus, Mr. Leinsing's expert opinion is not a rebuttal opinion at all and it should have been disclosed by Plaintiff's March 8, 2021 initial expert disclosure deadline.

Regardless of whether Mr. Leinsing's testimony is considered rebuttal or not, Plaintiff's disclosure of his testimony is untimely. Rule 37(c)(1) provides that, if a party fails to timely disclose of a witness, that party is not allowed to use that witness at trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). Plaintiff, of course, argues that his late disclosure is both substantially justified *and* harmless, while Defendant argues the opposite.

Plaintiff's substantial justification argument relies on his characterization of Defendant's expert testimony as untimely, nonparty-fault opinion. According to Plaintiff, he "did not anticipate rebutting expert testimony directed at nonparties" because Defendant failed to timely designate any nonparties at fault. (Doc. 124 at 4). Thus, Plaintiff believes that he became "substantially justified" in using Mr. Leinsing's testimony as soon as Defendant disclosed Dr. Seger and Dr. Ochoa, because their testimony—according to Plaintiff—placed fault on the surgeons by alleging their misuse of the stapler. *Id.* The Court is unpersuaded by this argument because, as this Court found above, neither of Defendant's experts nor Defendant itself intend to argue that the surgeons are at fault in this case. *See supra* pt. II, sec. A. Moreover, *even if* Defendant's experts were to opine that the surgeons were at fault, that would not "substantially justify" the disclosure of Mr. Leinsing because his opinion does not rebut Defendant's experts at all but rather adopts their conclusion to

---

[5] That Plaintiff intends to use Mr. Leinsing's testimony as the basis for his design defect claim—rather than as rebuttal testimony only—is further underscored by the argument Plaintiff makes in opposition to Defendant's Motion for Summary Judgment. In response to Defendant's argument that Plaintiff lacked any working theory for his design defect claim, Plaintiff points to Mr. Leinsing's testimony as being the basis of the claim. (Doc. 134 at 5–6). Thus, on one hand, Plaintiff is arguing that Mr. Leinsing is merely a rebuttal expert whose testimony is only needed in the event Defendant's experts are permitted to testify. On the other hand, Plaintiff is arguing that Mr. Leinsing's testimony serves as the very foundation of his design defect claim.

"springboard" a new design defect theory.

As to harmlessness, Plaintiff argues that a trial date has not been set and plenty of time remains for Defendant to depose Mr. Leinsing. (Doc. 124 at 4). Plaintiff asserts that *he* will be the one most significantly harmed if Mr. Leinsing is not permitted to testify. (*Id.* at 4–5). Defendant responds that permitting Mr. Leinsing's testimony—which would introduce an entirely new design defect theory—would require the re-opening of discovery, the re-doing of expert work-ups, reports, and depositions, and the re-setting of dispositive motion deadlines. (Doc. 131 at 9). According to Defendant, such disruption would delay this case further and result in increased costs and fees. (*Id.*). The Court agrees with Defendant and finds that permitting the late disclosure of Mr. Leinsing would not be harmless. This Court has been generous with the parties' expert disclosure deadlines to this point, having already extended them several times. (*See* Docs. 22, 28, 30, 74, 96, 102, 107, 110, 113 & 117). Moreover, this case is well beyond the two-year anniversary of its filing, and this Court has previously warned the parties that it will not continue to grant extensions, particularly those that would affect the dispositive motion deadline. (*See, e.g.*, Doc. 113 at 1). Permitting Mr. Leinsing's late disclosure would undoubtedly lead to further delays in this case. At the very least, Defendant would need an opportunity to depose Mr. Leinsing and would likely seek a withdraw of its pending Motion for Summary Judgment so that it could refile with arguments accounting for Mr. Leinsing's testimony. And given that Mr. Leinsing's testimony offers a new defect theory altogether, Defendant would need an opportunity to rebut the new theory with expert testimony of its own and to conduct additional written discovery and depositions.

All told, this Court finds that Mr. Leinsing's testimony does not constitute "rebuttal" opinion and instead introduces a new theory altogether. Moreover, the untimely nature of Plaintiff's disclosure is neither substantially justified nor harmless. Therefore, this Court denies Plaintiff's Motion for Leave.

///

///

### III. CONCLUSION

In conclusion, this Court finds that Defendant's experts, Dr. Seger and Dr. Ochoa, do not offer "standard of care" or "fault" opinions. Thus, their testimony does not run afoul of Arizona law and the Court denies Plaintiff's request to exclude them. Additionally, this Court finds that Mr. Leinsing is not a "rebuttal" expert and that Plaintiff's untimely disclosure of him was neither substantially justified nor harmless.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Exclude (Doc. 137) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave (Doc. 124) is **denied**.

Dated this 11th day of April, 2022.

Honorable Steven P. Logan
United States District Judge