**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Canning,<br><br>　　　　　Plaintiff,<br>vs.<br><br>Medtronic Incorporated, et al.,<br><br>　　　　　Defendants. | No. CV-19-04565-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant Medtronic Incorporated's ("Defendant")[1] Motion to Strike (Doc. 126) and Motion for Summary Judgment (Doc. 127). In the Motion to Strike, Defendant seeks to preclude the manufacture defect opinions of Plaintiff's expert, Dr. Carl Adams. In the Motion for Summary Judgment, Defendant requests summary judgment in its favor as to all Plaintiff's claims. Both motions are fully briefed and ready for review. (Docs. 126, 136 & 142; Docs. 127, 134 & 141). Having reviewed the parties' briefing, the Court rules as follows.

**I.　　BACKGROUND**

This is a products liability case arising from the use of a medical stapler gun during a surgical procedure performed on Plaintiff. (Doc. 13 at 2). The procedure—a robotic total gastrectomy during which Plaintiff's stomach was surgically removed—took place on

---

[1] Defendant submits that it was incorrectly named in this suit as Medtronic Incorporated. Defendant asserts that its correct name is Covidien Holding Inc. The Court will refer to Defendant as "Defendant" throughout this Order to minimize any confusion.

December 14, 2017 at Mayo Clinic Hospital ("Mayo") in Phoenix, Arizona. (*Id.*). The stapler was an EEAXL2535 model stapler[2] (a single-use device) that was designed and manufactured by Defendant. (*Id.*). After Plaintiff's stomach was removed, the Mayo surgeons inserted the stapler into Plaintiff's esophagus to create an "anastomosis"[3] between his esophagus and his intestinal tract. (*Id.* at 3). The surgeons fired the stapler, but it failed to deploy staples. (*Id.*). As a result, Plaintiff's esophagus was torn, and the anastomosis had to be completed by hand. (*Id.* at 4). Plaintiff suffered extended stays in the ICU, in the hospital, and in rehabilitation. (*Id.*). His pain was continuous and magnified by any attempts to swallow or breathe, and he will continue to suffer deterioration in his ability to intake adequate nutrition. (*Id.*).

Following the surgery, the stapler was sent back to Defendant for inspection. (*Id.* at 3). Defendant inspected the stapler and found that it had been fired, and that it contained no staples. (*Id.*). Defendant installed staples, fired the stapler, and reported that it functioned properly. (*Id.*). Plaintiff now alleges that the stapler was delivered by Defendant to Mayo without staples, and that it was therefore defective. (*Id.*).

On May 24, 2019, Plaintiff filed a Complaint against Defendant in the Superior Court of the State of Arizona. (Doc. 1-3 at 8). On June 26, 2019, Defendant removed the case to this Court. (Doc. 1 at 1). On July 23, 2019, Plaintiff filed an Amended Complaint containing two counts. (Doc. 13). Count I ("Negligence") can be distilled to three claims: negligent design, negligent manufacture, and negligent failure to warn. (*Id.* at 5). Count II ("Strict Liability/Breach of Implied Warranty/Defect of Manufacture and Design") can also be narrowed to three claims: strict-liability design defect, strict-liability manufacture defect, and breach of implied warranty. (*Id.*).

---

[2] In their Joint Rule 26(f) Case Management Report, the parties more specifically identified the stapler as a DST Series™ EEA™ XL 25mm Single Use Stapler with 3.5 staples (reorder code EEAXL2535). (Doc. 20 at 2).

[3] Plaintiff explains that an anastomosis "is a surgically created connection between two structures that are not normally connected." (Doc. 137 at 3, n.3).

2

## II. **LEGAL STANDARDS**

### A. Expert Testimony

Federal Rule of Evidence ("FRE") 702 permits parties to file motions to exclude to ensure relevance and reliability of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152–53 (1999). FRE 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Rule imposes on the trial courts a gatekeeping obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "Whether the expert is appropriately qualified, whether her testimony is relevant, and whether her testimony is reliable are all distinct inquiries under Rule 702." *Contreras v. Brown*, No. CV-17-08217-PHX-JAT, 2019 WL 2080143, at *1 (D. Ariz. May 10, 2019).

The proponent of the expert evidence has the burden of proving the expert's testimony is admissible under Rule 702 and the *Daubert* standard. *Grant v. Bristol-Myers Squibb*, 97 F. Supp. 2d 986, 989 (D. Ariz. 2000). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* When the expert does not meet the threshold, the Court may prevent her from providing testimony. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.").

///

### B. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material. *Anderson*, 477 U.S. at 250. In other words, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and, instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

When considering a motion for summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must view the factual record and draw all reasonable inferences in the nonmovant's favor. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

///

///

### III. DISCUSSION

In the Motion to Strike (Doc. 126), Defendant requests that this Court strike Dr. Adams' manufacture defect opinion. In the Motion for Summary Judgment (Doc. 127), Defendant requests summary judgment as to all of Plaintiff's claims. The Court will address each motion in turn.

#### A. Defendant's Motion to Strike Dr. Adams'

Dr. Adams concludes that Plaintiff's injuries were the result of a defective stapler that failed to deliver a staple load and did not cut the tissue properly. (Doc. 137-3 at 5). Dr. Adams asserts that the stapler was missing staples altogether and that the stapler's failure was "the only major factor" that contributed to Plaintiff's injuries. (*Id.* at 3, 4). Defendant now argues that Dr. Adams' manufacture defect opinion should be excluded because (i) Dr. Adams is not qualified to offer such a defect opinion and (ii) the opinion is speculative and unreliable. (Doc. 126 at 4).

There does not appear to be much in dispute with respect to Defendant's Motion to Strike because Plaintiff does not directly respond to Defendant's arguments. Specifically, Plaintiff does not respond by contending that Dr. Adams is qualified to offer a defect opinion or even that his defect opinion is reliable. (*See generally* Doc. 136). The Court views Plaintiff's failure to respond to these arguments as concessions that Dr. Adams is unqualified to offer a defect opinion and that his defect opinion is speculative and unreliable.[4] *See Panaccione v. Aldonex Inc.*, No. CV-19-04483-PHX-DLR, 2021 WL

---

[4] Setting aside Plaintiff's concession, the Court finds Defendant's arguments well-taken on their merits. FRE 702 requires an expert witness to be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Here, Dr. Adams has no apparent qualifications to opine as to whether the stapler was defective. He has no experience with the design or manufacture of medical devices, let alone with the stapler at issue. (Doc. 126-1 at 31). He has never researched, disassembled, or studied the stapler himself, and he has not reviewed testing files, engineering documents, or other literature on the stapler. (*Id.* at 24–25, 28–31). Unsurprisingly, Dr. Adams was not even asked by Plaintiff to provide a defect opinion; according to his report, he was asked "to review the
///
///

268781, at *3 (D. Ariz. Jan. 27, 2021) ("Failure to respond to the merits of one party's argument constitutes a concession of that argument." (internal quotations and citation omitted)); *Mendoza v. City of Peoria*, No. CV-13-00258-PHX-DJH, 2015 WL 13239816, at *4 (D. Ariz. July 31, 2015) (construing Plaintiff's "silence" on an argument as a concession).

Instead, Plaintiff argues in his Response that the evidence supports a finding that the stapler was missing staples, and that Plaintiff does not need an expert to prove it. (Doc. 136 at 2). Whether Plaintiff's evidence is sufficient to prove a defect and whether he needs expert testimony to prevail on his claims are issues better addressed below, with respect to Defendant's Motion for Summary Judgment. As it relates to Dr. Adams, Plaintiff's only argument in the Response is that Dr. Adams should be permitted to testify that he, as a surgeon, would expect the stapler to be loaded with staples. (*Id.* at 3). The Court sees no issue with such testimony. Moreover, Defendant does not dispute that Dr. Adams may testify that he expects surgical staplers to have staples in them. (Doc. 142 at 2 ("Plaintiff contends Dr. Adams is qualified to testify that he expects surgical staplers to have staples in it. [Defendant] does not dispute this.")).

In sum, the Court grants Defendant's Motion to Strike. While Dr. Adams may testify as to his own experience using surgical staplers—including that he expects them to be loaded with staples—Dr. Adams may *not* opine as to the existence of a manufacture defect in the stapler at issue in this case.

///

---

medical records and respond to [Plaintiff's] questions with regard to the consequences" of the stapler's failure. (Doc. 137-3 at 1).

Even if Dr. Adams was qualified to offer a defect opinion, his expert report falls well short of FRE 702's requirements for reliability. He reaches his "defect opinion"—if one could even call it that—based only on the reports of the Mayo surgeons and not on any analysis of his own. Again, Dr. Adams never inspected or tested the stapler at issue, nor did he review tests done on the stapler by others. There is no evidence that Dr. Adams' manufacture defect opinion is based on "sufficient facts or data" or that it is "the product or reliable principles and methods." Thus, even if Dr. Adams were qualified, his manufacture defect opinion would still be excluded as unreliable.

**B. Defendant's Motion for Summary Judgment**

Before analyzing Plaintiff's claims under the summary judgment standard, this Court will address two initial matters. First, the parties agree that Plaintiff's claim for negligent failure to warn should be dismissed. (*See* Doc. 134 at 2 ("[Plaintiff] and the Defendant agree that this is not a case involving the failure to adequately warn. The Defendant is correct that [Plaintiff] has not raised a theory of inadequate warnings or instructions.")). Therefore, this Court grants summary judgment to Defendant on Plaintiff's negligence claim to the extent it is based on a failure-to-warn theory. Second, Arizona law provides that "the theory of liability under implied warranty has been merged into the doctrine of strict liability." *D'Agnese v. Novartis Pharms. Corp.*, 952 F. Supp. 2d 880, 890 (D. Ariz. 2013) (citations omitted). Thus, Plaintiff's breach of implied warranty claim has merged with his strict liability claims, and this Court's holding with respect to Plaintiff's strict liability claims—as stated below—applies with equal force to Plaintiff's breach of implied warranty claim.

With these initial matters out of the way, Plaintiff's Amended Complaint is condensed to design defect and manufacture defect claims under both negligence and strict liability theories. Whereas a defectively *manufactured* product is one that is flawed because of something gone wrong during the manufacturing process, a defectively *designed* product "is one that is made as the manufacturer intended it to be but that is unreasonably dangerous." *Gomulka v. Yavapai Mach. & Auto Parts, Inc.*, 155 Ariz. 239, 241–42 (Ct. App. 1987). This Court will first examine Plaintiff's design defect claims and then turn to his manufacture defect claims.

*1. Design Defect Claims*

Plaintiff alleges design defect claims under both negligence (Count I) and strict liability (Count II) theories. In negligent design cases, the plaintiff "must prove that the designer or manufacturer acted unreasonably at the time of . . . design of the product." *Id.* at 247; *see also Mather v. Caterpillar Tractor Corp.*, 533 P.2d 717, 719 (Ariz. Ct. App. 1975) ("Under the negligence theory a 'design defect' arises when the manufacturer has

failed to use reasonable care to design its products so as to make it safe for intended uses."). "This inquiry focuses on what the designer knew or reasonably should have known at the time of design." *Granillo v. Johnson & Johnson*, No. CV-19-00529-TUC-CKJ (MSA), 2020 WL 913300, at *2 (D. Ariz. Feb. 12, 2020) (citing *Dart v. Wiebe Mfg., Inc.*, 147 Ariz. 242, 247 (1985)).

In contrast to negligence, strict products liability "does not rest on traditional concepts of fault" and its plaintiffs do "not have to prove that the defendant was negligent." *St. Clair v. Nellcor Puritan Bennett LLC*, No. CV-10-1275-PHX-LOA, 2011 WL 5331674, at *4 (D. Ariz. Nov. 7, 2011) (citation omitted). The focus of a strict liability claim is on the quality of the product, not on the conduct of the defendant. *Id.* at *5 (citing *Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, 581 (Ct. App. 2003)). Under Arizona law, a prima facie case for strict products liability requires a plaintiff "to show the following: the product is defective and unreasonably dangerous; the defective condition existed at the time it left defendant's control; and the defective condition is the proximate cause of the plaintiff's injuries." *Id.* at *4 (citing *Dietz v. Waller*, 141 Ariz. 107, 110 (1984)). "There are three categories of defects in strict products liability actions: manufacturing defects; design defects; and informational defects in regard to instructions and warnings." *Sw. Pet Prods., Inc. v. Koch Indus., Inc.*, 273 F. Supp. 2d 1041, 1051 (D. Ariz. 2003) (citing *Piper v. Bear Med. Sys., Inc.*, 180 Ariz. 170, 173–74 (Ct. App. 1993)).

Defendant argues that Plaintiff not only lacks sufficient evidence of a design defect, but that he lacks even a working theory of a design defect. (Doc. 127 at 9–10). Defendant contends that—despite its own discovery disclosures to Plaintiff of design-related documents and witness testimony—Plaintiff has not criticized any aspect of the stapler's design or otherwise explained the basis of his design defect claim. (*Id.*).

Plaintiff's response is revealing. Instead of coming forward with specific facts showing that there are genuine, design-defect claims for trial, Plaintiff offers only the

testimony of Mr. Leinsing as support for his design defect claims.[5] (Doc. 134 at 5–6). However, this Court has already ruled that Mr. Leinsing's testimony will not be permitted because Plaintiff failed to disclose of him as an expert until November 11, 2021—long after the parties' expert disclosure deadlines and the close of discovery. (Doc. 146 at 10–15). Moreover, in Plaintiff's Motion for Leave—in which Plaintiff requested permission for Mr. Leinsing's late disclosure—Plaintiff characterized Mr. Leinsing as a rebuttal expert only. (Doc. 124 at 5). Plaintiff argued that his testimony was needed only to rebut Defendant's experts, whom Plaintiff claimed improperly designated the Mayo surgeons as nonparties at fault. (*Id.* ("[Mr. Leinsing] is intended merely to defend against the Defendant's untimely designations [of the Mayo surgeons as nonparties at fault]."); Doc. 133 at 6 ("Only [Defendant]'s violation of the nonparty at fault rule . . . caused the hiring of Mr. Leinsing.")). Now, in offering Mr. Leinsing's testimony as substantive evidence of his design defect claims, Plaintiff implies that Mr. Leinsing was intended as more than a rebuttal expert after all. If so, Plaintiff's need for Mr. Leinsing's testimony arose *well before* Defendant disclosed its experts and allegedly violated the nonparty-at-fault rule; the Court is unsure why Plaintiff waited so long to bring Mr. Leinsing into the case or how Plaintiff planned to prove his design defect claims in the event this Court denied Plaintiff's request for Mr. Leinsing's late disclosure.

Regardless, Plaintiff's design defect claims must be dismissed because Plaintiff has failed to come forward with sufficient evidence showing that a genuine dispute of material fact remains for the factfinder to resolve. *See Celotex Corp.*, 477 U.S. at 324. Plaintiff's four-sentence response offers only Mr. Leinsing's testimony to support his design defect claims (Doc. 134 at 5–6), and this Court has already ruled that his testimony will not be permitted (Doc. 146 at 15). Plaintiff appears to have simply assumed this Court would

---

[5] Mr. Leinsing would apparently testify that Defendant's stapler should have been designed with a safety feature that would have ensured the stapler could not fire without the anvil fully mated to the stapler head. (Doc. 134 at 6).

9

permit Mr. Leinsing's testimony. The Court did not do so, and Plaintiff is left without any support for his design defect claims. Summary judgment in Defendant's favor—on Plaintiff's negligent and strict-liability design defect claims—is appropriate.

### 2. Manufacture Defect Claims

Plaintiff alleges manufacture defect claims under both negligence (Count I) and strict liability (Count II) theories. Under Arizona law and as noted above, "[a] defectively manufactured product is one that is flawed as a result of something that went wrong during the manufacturing process." *Gomulka*, 155 Ariz. at 241–42. The Court will first address Plaintiff's strict liability manufacture defect claim because if Plaintiff cannot prove his case in strict liability, he cannot prove it in negligence either. *See id.* at 243 (explaining that negligence theory requires plaintiff to prove everything under strict liability plus more).

### a. Strict Liability Manufacture Defect Claim

Defendant argues that it is entitled to summary judgment on Plaintiff's strict liability manufacture defect claim because Plaintiff has no expert testimony to support the claim. (Doc. 127 at 5–8). Defendant further contends that, even if expert testimony is not required, Plaintiff nonetheless lacks sufficient, summary judgment evidence to prevail on the claim. (*Id.* at 8–9). The Court is unpersuaded by either argument and finds that Plaintiff has sufficient evidence to defeat summary judgment on this claim.

As noted above, the focus of a strict products liability claim is on the quality of the product, not on the conduct of the defendant. *St. Clair*, 2011 WL 5331674, at *5; *see also State Farm Ins. Cos. V. Premier Manufactured Sys., Inc.*, 213 Ariz. 419, 422 (Ct. App. 2006) ("A strict products liability plaintiff does not have to prove the defendant was negligent."); *Vineyard v. Empire Mach. Co., Inc.*, 119 Ariz. 502, 504–05 (Ct. App. 1978) ("What the doctrine of strict liability does is to relieve the plaintiff from proving the defendant's specific acts of negligence (the proof of the defect being substituted for proof of negligence)."). That said, liability is not imposed for every injury caused by a product but instead exists "only if the product was in a defective condition unreasonably dangerous." *Dart*, 147 Ariz. at 244. The elements for a strict-liability manufacture defect

claim are the same as those for a design defect claim: (i) the product is defective *and* unreasonably dangerous; (ii) the defective condition existed at the time the product left the defendant's control; and (iii) the defective condition is the proximate cause of the plaintiff's injuries. *St. Clair*, 2011 WL 5331674, at *4 (citing *Dietz*, 141 Ariz. at 110).

Defendant first asserts that Plaintiff is required—under *Rossell v. Volkswagon of America*, 147 Ariz. 160 (1985)—to use an expert to establish the existence of a defect because the issues in this case "are beyond the common understanding of jurors." (Doc. 127 at 6–8). Defendant's argument is that because Plaintiff's only expert—Dr. Adams—is unable to provide a manufacture defect opinion, Plaintiff's manufacture defect claims must be dismissed for lack of expert support. (*Id.*). The Court is unpersuaded by Defendant's argument, at least insofar as it applies to Plaintiff's strict liability claim. As this Court has previously found, *Rossell* "stands only for the proposition that *in negligence cases*, expert evidence may sometimes be required in assisting the jury to determine what the 'reasonable care' standard is." *Walsh v. LG Chem Am.*, No. CV-18-01545-PHX-SPL, 2021 WL 5177864, at *3 (D. Ariz. Nov. 8, 2021) (emphasis added) (citing *Rossell*, 147 Ariz. at 166–67)); *see also Martinez v. Terex Corp.*, 241 F.R.D. 631, 641 (D. Ariz. 2007) ("[I]t is apparent that there is no requirement under Arizona law that expert testimony be given in a products liability action."); *Dietz*, 141 Ariz. at 110 ("Plaintiffs . . . must be permitted to rely upon circumstantial evidence alone in strict liability cases."). Here, the issue is not related to Defendant's negligence or the reasonable care standard, but instead concerns proving the existence of a manufacture defect. The Court finds *Rossell* inapplicable to Plaintiff's strict liability manufacture defect claim and will not dismiss the claim for lack of expert support.

Defendant's second argument is that, even if expert testimony is not required, Plaintiff nonetheless lacks sufficient, summary judgment evidence that a defect existed. (Doc. 127 at 8–9). Defendant contends that Plaintiff's evidentiary support consists only of a series of "assumptions about possibilities." (Doc. 141 at 5). In response, Plaintiff lists evidence that he asserts is sufficient for a jury to reasonably find that the stapler lacked

staples and was therefore defective. (Doc. 134 at 2–5).

"Arizona courts have allowed plaintiffs to rely on circumstantial evidence to establish a defect that existed at the time the product left the defendant's control caused the injuries." *Phila. Indem. Ins. Co. v. BMW of N. Am. LLC*, No. CV-13-01228-PHX-JZB, 2015 WL 5693525, at *15 (D. Ariz. Sept. 29, 2015) (citing *Reader v. Gen. Motors Corp.*, 483 P.2d 1388, 1393–94 (Ariz. 1971)); *see also Dietz*, 141 Ariz. at 110 ("Plaintiffs, we have held, must be permitted to rely upon circumstantial evidence alone in strict liability cases, because it is unrealistic to expect them to otherwise be able to prove that a particular product was sold in a defective condition."). "However, Arizona courts limit reliance on such evidence to situations where the product is unavailable or otherwise incapable of inspection." *Phila. Indem. Ins. Co.*, 2015 WL 5693525, at *15 (citations omitted). Here, although the stapler was available for inspection (in fact, Defendant inspected the stapler itself following Plaintiff's procedure), there is no dispute that the most important question—whether the stapler had staples in it—was and is incapable of being answered by an inspection. Accordingly, Plaintiff may rely on circumstantial evidence to establish his strict liability manufacture defect claim.

The question then is whether Plaintiff's circumstantial evidence is sufficient to survive summary judgment. *See id.* at *16 (citing *Dietz*, 141 Ariz. at 110–11). If Plaintiff provides sufficient circumstantial evidence to permit an inference that the incident was caused by a defect, then "no specific defect need be shown." *Dietz*, 141 Ariz. at 110–11. Plaintiff is also not required "to eliminate with certainty all other possible causes" of the product's failure in proving it defective. *Id.* at 111. Instead, Plaintiff must "present evidence sufficient to allow the trier of facts to reasonably infer that it was more probable than not that the product was defective." *Id.*

Here, Plaintiff has circumstantial evidence from which it could be inferred that the stapler lacked staples and therefore had a manufacture defect. First, the single-use stapler was designed to discharge "several dozen" staples upon its firing. (Doc. 136 at 2). All three surgeons who were viewing the operation discussed the fact that there were no staples after

the stapler was fired. (Doc. 135 at 3). A fourth surgeon joined them to continue the operation and correct the error; the fourth surgeon also testified that no staples were seen. (*Id.*). Plaintiff argues that "[i]t is almost impossible to believe that after a stapler misfires, there would be two dozen staples free-floating in [Plaintiff]'s abdomen, and that all four Mayo surgeons . . . would fail to detect a single one of the two dozen staples." (Doc. 134 at 2). Indeed, this evidence alone—that four qualified, trained surgeons had their eyes on the procedure when the stapler was used and now unanimously testify that they did not see any staples—is strong evidence in favor of Plaintiff's no-staples theory.[6]

In addition to the surgeons' reports and testimony, Plaintiff also has evidence related to Defendant's manufacturing process of the stapler that shows how it may be possible for a stapler to be delivered without staples. Specifically, Defendant's Rule 30(b)(6) witness, Thomas Hessler, testified that there was "at least the possibility" that a stapler could leave the manufacturing process without staples—albeit only if all of the "checks" for the presence of staples along the assembly process broke down. (Doc. 134 at 5 (citing Doc. 135-5 at 19)). Additionally, three types of staplers—defective staplers, intentionally non-conforming staplers, and staplers chosen to be test fired—are removed from the production line and then refurbished for sale. (*Id.* (citing Doc. 135 at 4–5)). None of these staplers have serial numbers, so it is impossible to know if a particular stapler is a refurbished device. (*Id.* (citing Doc. 135-5 at 38, 55)). While not conclusive, the Court finds this evidence, viewed in Plaintiff's favor, to support his manufacture defect claim.

Finally, Plaintiff has the testimony of Dr. Adams. While Dr. Adams will not be permitted to testify that the stapler in this case lacked staples or that it was otherwise defective in any way, his testimony still lends support to Plaintiff's case. For example, Dr. Adams may testify that he, as a surgeon, expects single-use, surgical staplers such as the

---

[6] Defendant attempts to negate the surgeons' testimony that no staples were seen by pointing out that the surgeons admitted to never actively searching for staples in Plaintiff's bowel. (Doc. 127 at 8). To be sure, this is relevant evidence that undercuts the surgeons' testimony. However, it certainly does not invalidate the surgeons' testimony altogether, and this Court views all evidence in Plaintiff's favor at this summary-judgment stage.

one at issue to have staples in them. *See supra* pt. III, sec. A. Such testimony may assist the jury in using the consumer expectation test[7] because it sheds light on the expectations that an ordinary user of the stapler would have. Dr. Adams may also testify as to causation—that is, he may testify as to the injuries Plaintiff suffered because of the failed anastomosis that occurred during the surgery, and he may be able to explain how such injuries could plausibly result from the use of a defective stapler (without actually testifying that the stapler here was defective, of course).

All told, the Court finds that Plaintiff's evidence—viewed in Plaintiff's favor—is sufficient to create a genuine dispute of material fact as to whether the stapler had staples in it and was therefore defective. The Court denies Defendant's request for summary judgment on Plaintiff's strict liability manufacture defect claim.

### b. *Negligent Manufacture Defect Claim*

Whereas the central inquiry in a strict products liability claim is focused on the product and whether it was unreasonably dangerous, negligence products liability claims are focused on whether the manufacturer's conduct was reasonable in view of the foreseeable risk of injury. *Dart*, 147 Ariz. at 246. In other words, to succeed on a negligent manufacture claim, "a plaintiff must prove that the manufacturer acted unreasonably at the time of . . . manufacture in light of the foreseeable risk of injury from use of the product." *Golonka*, 204 Ariz. at 581.

Setting aside the issue of whether Plaintiff was required to have expert testimony to prevail on his negligence claim, the Court finds that Plaintiff's negligence claim must be

---

[7] In a manufacture defect case, the fact-finder uses the consumer expectations test, rather than the risk/benefit test, to determine whether a product is "defective and unreasonably dangerous." *Dart*, 147 Ariz. at 244–45 (indicating that, where a manufacture defect is alleged, a consumer expectations instruction should be given); *Boy v. I.T.T. Grinnell Corp.*, 150 Ariz. 526, 536 (Ct. App. 1986) ("In no event should the jury's determination of whether there was a manufacturing defect be framed by a risk/benefit instruction."). "Under the consumer expectation test, the fact-finder determines whether the product 'failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner.' If so, the product was in a defective condition and unreasonably dangerous." *Golonka*, 204 Ariz. at 581 (citing *Dart*, 147 Ariz. at 245).

dismissed because Plaintiff has not provided evidence of unreasonable conduct by Defendant in the manufacturing process. As Defendant points out, Plaintiff has very little evidence concerning the manufacturing process for the stapler at issue. Plaintiff does not assert that Defendant acted unreasonably or that Defendant erred in any way at any step of the manufacturing process. While Plaintiff does have evidence that the stapler was defective—namely, that four surgeons present during the procedure testify as to the absence of staples after it was fired—Plaintiff must also point to some conduct by Defendant that was negligent. *Phila. Indem. Ins. Co.*, 2015 WL 5693525, at *16 ("[I]n evaluating a negligence claim, evidence of defect is not sufficient; there must be evidence of unreasonable conduct on the part of Defendant."). Thus, the Court grants summary judgment in Defendant's favor on Plaintiff's negligent manufacture defect claim.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Strike (Doc. 126) is **granted**. To the extent Dr. Adams testifies regarding a manufacture defect, such testimony is excluded.

**IT IS FURTHER ORDERED** that Plaintiff's claim for breach of implied warranty is merged with Plaintiff's strict-liability claims.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 127) is **granted in part** as to Plaintiff's claims for negligent design, negligent manufacture, negligent failure to warn, and strict-liability design defect. Those claims are dismissed entirely.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 127) is **denied in part** as to Plaintiff's claim for strict-liability manufacture defect.

Dated this 14th day of April, 2022.

Honorable Steven P. Logan
United States District Judge